1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   **DESHAWN DUNDRE BROADNAX,**              Civil No.        **12cv0560-GPC (RBB)**

12                              **Petitioner,**
                                                **ORDER:**
13
                    **vs.**                     **(1)  DENYING REQUEST FOR**
14                                              **EVIDENTIARY HEARING;**

15   **DR. JEFFREY BEARD, Secretary,**          **(2)  DENYING PETITION FOR WRIT**
                                                **OF HABEAS CORPUS; and**
16
                              **Respondent.[1]**  **(3)  ISSUING A LIMITED**
17                                              **CERTIFICATE OF APPEALABILITY**

18

19   **I.      INTRODUCTION**

20          Petitioner Deshawn Dundre Broadnax is a state prisoner proceeding pro se and

21   in forma pauperis with a First Amended Petition for a Writ of Habeas Corpus pursuant

22   to 28 U.S.C. § 2254.  (ECF No. 16.)  Petitioner is serving two consecutive terms of life

23   imprisonment without the possibility of parole, plus fifty-seven years-to-life, as a result

24   of convictions in the San Diego County Superior Court for two counts of first degree

25          [1]  The Clerk of Court is directed to amend the docket to reflect that Dr. Jeffrey Beard, the Secretary
     of the California Department of Corrections and Rehabilitation, has been substituted as Respondent in place
26   of his predecessor and former Respondent Matthew Cate.  See Fed. R. Civ. P. 25(d) (requiring automatic
     substitution as a party the successor of a public office).  In addition, although this case was randomly referred
27   to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has
     determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of
28   this matter.  See S.D. Cal. Civ.L.R. 71.1(d).

                                          1                              12cv0560

murder with special circumstances, one count of dissuading a witness from testifying, and one count of attempted witness intimidation, each of which the jury found were committed for the benefit of a criminal street gang.  (First Amended Petition ["FAP"] at 1-2[2]; Lodgment No. 1, Clerk's Transcript ["CT"] at 621-27.)  Petitioner requests an evidentiary hearing, and claims that: (1) the jury was permitted to draw unconstitutional inferences about guilt and the requisite mental states due to a faulty instruction; (2) the trial court erred in denying a new trial motion which was based on evidence withheld from the defense; and (3) insufficient evidence exists to support the verdict for dissuading a witness from testifying, or, alternately, an element of that offense was omitted from the jury instructions.  (FAP at 1, 6-46.)

Respondent has filed an Amended Answer to the First Amended Petition, which is accompanied by a Memorandum of Points and Authorities in support, and a Notice of Lodgment.  (ECF Nos. 21, 23.)  Respondent contends that an evidentiary hearing is unnecessary, and that habeas relief is unavailable because claim one is procedurally defaulted, claim two does not present a federal question, any potential errors are harmless, and the state court's adjudication of the claims is objectively reasonable within the meaning of 28 U.S.C. § 2254(d).  (Memorandum of Points and Authorities in Support of Amended Answer ["Ans. Mem."] at 13-23.)

Petitioner has filed a Reply.  (ECF No. 25.)  He contends Respondent has failed to demonstrate claim one is procedurally defaulted, argues that habeas relief is warranted on all his claims, and requests an evidentiary hearing be held on his second claim in order to determine whether evidence was withheld in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (recognizing a constitutional duty of the government to disclose to the defense exculpatory evidence material to guilt or punishment).  (<u>See</u> Reply at 1-19.)

/ / /

---

[2] Page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic case filing system.

For the reasons discussed below, Petitioner's request for an evidentiary hearing is **DENIED**, the Petition is **DENIED**, and a Certificate of Appealability is **ISSUED** limited to claim two.

## II.   BACKGROUND

In an unpublished opinion, the appellate court summarized the evidence presented against Petitioner:

A. *Background*

Broadnax is an active participant in the Lincoln Park Bloods Street Gang (Lincoln Park).  Anthony Torian is also a Lincoln Park gang member.  Torian was introduced to Broadnax in 2006 by another Lincoln Park gang member.  Torian usually "hung out" with Broadnax every day.

At all relevant times, Torian was dating Kimberly Cyr.  Broadnax, Torian and Cyr had "hung out" together on occasion.  [¶]  Skyline is another street gang, and is a rival of Lincoln Park.

B. *The Murders*

On December 5, 2006, Ahmad Lewis, a Lincoln Park gang member, was murdered in Lincoln Park gang territory.  Lewis was associated with Broadnax and Torian.  On December 6, 2006, Broadnax and Torian drove to the Meadowbrook Apartments (Meadowbrook), a Skyline hangout, to shoot a member of the rival gang in retaliation for Lewis's death.

While Torian drove Broadnax to Meadowbrook in his car, Broadnax showed him a gun he had under his shirt.  When they arrived, Torian parked on the west side of Deep Dell Road, near a liquor store.

Torian entered the liquor store and bought a pack of cigarettes.  Torian exited the liquor store and saw Broadnax walking toward a cul-de-sac.  Then Torian lost sight of Broadnax.  Torian heard approximately eight rapid gunshots.  Then Torian saw Broadnax run from the cul-de-sac toward Torian's car.  Broadnax got in the passenger side of the car and Torian got in the driver's side.  Then they drove away.

During the car ride, Broadnax told Torian he had approached two "dudes" in the cul-de-sac, asked them for a cigarette, and then shot one of them in the head and the other as he tried to run away.

In reporting on the shooting later in the evening, a local television station displayed a photograph of Torian captured on the liquor store's surveillance video.

C. *Broadnax Dissuades a Witness, Cyr*

In further media reporting on the shooting, Torian's picture was also published in a local newspaper.  Torian showed Cyr his photograph in the newspaper and told her that he had not been involved in the

shooting.  Torian told Cyr they needed "to come up with a story" about going to the movies on December 6, 2006, and stopping at the liquor store on the way.

On December 16, 2006, Cyr attended a party in Mission Beach. During the party, Cyr approached Torian and Broadnax.  Broadnax told Cyr to "stick to the story" in a firm voice.  Cyr testified that she felt threatened.

On December 19, 2006, Cyr was interviewed by police investigators.  Cyr repeated the alibi she and Torian had agreed they would provide police.

On December 20, 2006, Broadnax arrived at Cyr's home.  Cyr joined Broadnax outside and observed two men standing beside her car. Broadnax told Cyr in a firm voice: "Remember what we told you. Stick to the story and don't do anything stupid. We know where you live." Cyr testified that she felt scared.

Later, Cyr gave a true account of events to the police.  Following Cyr's cooperation with police, she received witness protection services.

D. *Broadnax's False Statements to Police*

During an initial interview, Broadnax told police he could not remember what he was doing on December 6, and that he had not been in Skyline territory since 2004.  At a later interview, Broadnax told police that on December 6, 2006, he had been at home with his mother. Broadnax stated he had not been to Meadowbrook.  Broadnax also stated the last time he saw Torian was in September of 2006, and denied ever attending parties and going to the beach with Cyr.

Following Broadnax's arrest, a detective told Broadnax his DNA had been found on a cigarette at the murder scene.  Broadnax denied being in the area and again explained that he had been at home.

(Lodgment No. 6, <u>People v. Broadnax</u>, No. D054634, slip op. at 2-5 (Cal. Ct. App. Aug. 20, 2010).)

On February 26, 2007, a San Diego County Grand Jury returned a true bill of indictment accusing Broadnax and Torian with two counts of first degree murder, one count of dissuading a witness from testifying, and one count of attempted intimidation of a witness.  (CT 1-4.) The indictment alleged that both defendants were principals in the murders, that at least one of them personally used a firearm and proximately caused death or great bodily injury, and that they committed the offenses for the benefit of a criminal street gang.  (<u>Id.</u>)  The indictment contained two special circumstance allegations regarding the murder counts: (1) The defendants committed more than one

murder; and (2) they were active participants in a criminal street gang and intentionally committed the murders to further the activities of the gang. (Id.)

On October 15, 2007, prior to Broadnax's trial, Torian pleaded guilty to two counts of voluntary manslaughter, admitted the gang enhancement allegations, and admitted he was vicariously armed with a firearm. (Lodgment No. 2, Reporter's Transcript ["RT"] at 678-79.) The plea was subject to an agreement that he would receive a thirteen-year prison term if he testified truthfully at Petitioner's trial, and a sentence of twenty-three years and four-months otherwise, with the possibility that the deal could be negated and the murder charges reinstated if he was untruthful or failed to cooperate. (RT 675-77.) On December 19, 2008, a jury found Broadnax guilty of all counts and found all the enhancement and special circumstance allegations true. (CT 621-27.) On February 19, 2009, Petitioner's motion for a new trial and amended motion for a new trial were denied, and he was sentenced to two consecutive terms of life imprisonment without the possibility of parole, plus fifty-seven years-to-life. (CT 629; RT 1429-36, 1460-61.)

Petitioner appealed his convictions, raising the same claims presented here. (Lodgment No. 3.) The appellate court affirmed in all respects, finding claim one to have been waived because it had not been adequately preserved for review, and denying all claims on the merits. (Lodgment No. 6, People v. Broadnax, No D054634, slip op. at 5-14.)

Petitioner raised the same claims in a petition for review filed in the California Supreme Court, in which he also challenged the appellate court's finding that claim one had been waived. (Lodgment No. 7.) The state supreme court summarily denied the petition without citation of authority or a statement of reasons. (Lodgment No. 8, People v. Broadnax, No. S186803, order at 1 (Cal. Dec. 15, 2010).)

Petitioner filed a First Amended Petition, the operative pleading in this action, on May 1, 2012. Respondent filed an Amended Answer to the First Amended Petition on July 17, 2012, and Petitioner constructively filed a Reply on August 30, 2012.

12cv0560

## III.   DISCUSSION

### A.   <u>Scope of Review</u>

Title 28, United States Code, § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006).

As amended by AEDPA, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases[]" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court]

1  precedent to a new context where it should not apply or unreasonably refuses to extend

2  that principle to a new context where it should apply." Id.

3       "[A] federal habeas court may not issue the writ simply because the court

4  concludes in its independent judgment that the relevant state-court decision applied

5  clearly established federal law erroneously or incorrectly. Rather, that application must

6  be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal

7  quotation marks and citations omitted). Clearly established federal law "refers to the

8  holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions."

9  Williams, 529 U.S. at 412. In order to satisfy § 2254(d)(2), a federal habeas petitioner

10  must demonstrate that the factual findings upon which the state court's adjudication of

11  his claims rest are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340

12  (2003).

13       The Supreme Court has indicated that "[a] state court's determination that a

14  claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

15  disagree' on the correctness of the state court's decision." Harrington v. Richter, 562

16  U.S. ___, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

17  664 (2004).) The Court in Richter, in interpreting section 2254(d)(1), explained:

18       As a condition for obtaining habeas corpus from a federal court, a state
         prisoner must show that the state court's ruling on the claim being
19       presented in federal court was so lacking in justification that there was an
         error well understood and comprehended in existing law beyond any
20       possibility for fairminded disagreement.

21  Id. at 786-87.

22       "If this standard is difficult to meet, that is because it was meant to be." Id. at

23  786. "It preserves authority to issue the writ in cases where there is no possibility

24  fairminded jurists could disagree that the state court decision conflicts with this Court's

25  precedents." Id.

26       **B.   Analysis**

27       The Court will begin its analysis with claims two and three, as they inform the

28  discussion of claim one.

### 1.     Claim Two:  Denial of New Trial Motion

In claim two, Petitioner alleges that the trial court erred in denying his amended motion for a new trial, which was based on newly discovered evidence which he contends would have resulted in a different verdict had it been available at trial.  (FAP at 28.)  The motion was based on a letter Torian wrote and sent through the institutional mail before he testified, but which was not disclosed to the defense until after trial.  (CT 507-13.)  Petitioner argues that Torian downplayed his connection to the gang lifestyle at trial and was portrayed as frightened and intimidated by Broadnax during the murders, and as threatened and intimidated by Broadnax and other gang members while incarcerated, whereas the letter showed that gang involvement and a need to inflate his importance in the gang were important to Torian.  (FAP at 34.)  Petitioner argues that his trial counsel had very little with which to impeach Torian other than that he stood to gain more in the gang hierarchy from shooting rival gang members than did Broadnax, and the letter was direct, non-cumulative evidence showing how important his place in the gang hierarchy was to Torian.  (Id. at 34-35.)

Respondent answers that Petitioner has not alleged a violation of federal law with respect to this claim, and that a state law violation cannot provide the basis for federal habeas relief.  (Ans. Mem. at 16.)  Respondent also contends that the denial of the claim by the state court, on the basis that the new evidence was cumulative and would have made no difference to the outcome of the trial, neither misapplied United States Supreme Court precedent nor involved an unreasonable determination of the facts.  (Id. at 18.)

Broadnax replies that Respondent minimizes the importance of the new evidence and provides no support for finding it to be cumulative.  (Reply at 8-11.)  He argues that the letter is not cumulative because it is of a significantly different nature than the impeachment evidence at trial, which was based on Torian's inconsistent statements, his self-interest, and his plea agreement.  (Id. at 9.)  Petitioner does not challenge Respondent's contention that the claim fails to present a federal question.

Petitioner raised claim two in a petition for review filed in the California Supreme Court on direct appeal. (Lodgment No. 7, Petition for Review at 12-15, People v. Broadnax, No. SD2009701437.) That court denied the petition without citation of authority or a statement of reasoning. (Lodgment No. 8, People v. Broadnax, No. S186803, order at 1.) He presented the same claim to the state appellate court on direct appeal. (See Lodgment No. 3, Appellant's Opening Brief at 49-58, People v. Broadnax, No. D054634.) The appellate court denied the claim on the merits. (See Lodgment No. 6, People v. Broadnax, No. D054634, slip op. at 7-10.)

In Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991), the Supreme Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision. This Court will look through the silent denial by the state supreme court to the appellate court opinion, which is the last reasoned state court opinion to address this claim. Id.

In presenting claim two to the state court, Broadnax did not present a federal claim. The cases cited by Petitioner to the state courts in support of this claim do not involve federal constitutional principles, but rely only on state law principles, including California Penal Code section 1181.[3] (See Lodgment No. 3, Appellant's Opening Brief at 52-57, People v. Broadnax, D054634 (citing People v. Quaintance, 86 Cal. App. 3d 594, 601-02 (1978) ("The grant or denial of a motion for new trial is a matter within the sound discretion of the trial court whose ruling will be disturbed on appeal only when an abuse of discretion is clearly shown.") and People v. Huskins, 245 Cal. App. 2d 859, 862-64 (1966) (distinguishing People v. Long, 15 Cal. 2d, 607-08 (1940) (applying California Penal Code section 1181 and recognizing "that newly-discovered evidence which would tend merely to impeach a witness is not of itself sufficient ground for granting a new trial."); see also Lodgment No. 5, Appellant's Reply Brief at 13-14, People v. Broadnax, No. D054364 (citing People v. Martinez, 36 Cal. 3d 816,

---

[3] California Penal Code section 1181 provides in relevant part that a defendant's new trial motion may be granted: "When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." Cal. Penal Code § 1181 (West 2004).

823 (1984) ("[A] motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant.")); <u>see also</u> Lodgment No. 7, Petition for Review at 13-15, SD2009701437 (citing <u>Huskins</u>, 245 Cal. App. 2d at 862-63).)  These cases all apply the state law principle that the grant or denial of a new trial motion is left to the sound discretion of the trial court, with relevant limitations being that the new evidence must "render a different result probable on a retrial," "be not merely cumulative," and that "evidence which merely impeaches a witness [ordinarily] is not significant enough to make a different result probable, . . . ." <u>Huskins</u>, 245 Cal. App. 2d at 862; <u>see also</u> <u>Quaintance</u>, 86 Cal. App. 3d at 602.

The cases cited by the appellate court in denying this claim also rely on those same legal principles.  (<u>See</u> Lodgment No. 6, <u>People v. Broadnax</u>, No. D054634, slip op. at 8-9 (citing <u>People v. Delgado</u>, 5 Cal. 4th 312, 328 (1993), <u>Jiminez v. Sears, Roebuck & Co.</u>, 4 Cal. 3d 379, 387 (1971), <u>People v. Green</u>, 130 Cal. App. 3d 1, 11 (1982) and <u>People v. Beeler</u>, 9 Cal. 4th 953, 1004 (1995), <u>abrogation on other grounds recognized by</u> <u>People v. Pearson</u>, ___ Cal. 4th ___, 2013 WL 1149952 at *47 (Cal. Mar. 21, 2013).)  The <u>Martinez</u> case, in a portion of the opinion not cited to by Petitioner but referred to in the passage of the <u>Delgado</u> case cited by the appellate court, cited to <u>Ferrell v. Trailmobile, Inc.</u>, 223 F.2d 697, 698 (5th Cir. 1955), for the proposition that the requirement regarding diligence in discovering new evidence to support a new trial motion may need to be relaxed when the new evidence shows that a miscarriage of justice would result if the verdict were not set aside.  <u>Martinez</u>, 36 Cal. 3d at 825 n.7.  However, even if the state court decision could be read as recognizing that federal due process concerns can arise when a new trial motion is denied on the basis of a lack of diligence, it is clear from the discussion immediately below that diligence in presenting the evidence is not in issue here.[4]

---

[4]  The <u>Martinez</u> court, in that same passage, indicated that a new trial motion should be granted where the "defendant did not have a 'fair trial on the merits, and that by reason of the newly discovered evidence the result could reasonably and probably be different on a retrial.'" <u>Id.</u> (quoting <u>People v. Williams</u>, 57 Cal. 2d

Thus, claim two was presented to the state court, as it is presented here, as alleging a violation of state law only.  Federal habeas relief is not available for a claim based only on a violation of state law.  See 28 U.S.C. § 2254(a); see also McGuire, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

The result would be the same even if Petitioner's state court submissions could be read to have alleged a federal due process violation, or if his federal First Amended Petition, which is in substance identical to his opening state appellate brief, is liberally construed to present such a claim.  See e.g. Rochin v. California, 342 U.S. 165, 168-74 (1952) (recognizing that although the federal system generally commits to the states the administration of criminal justice, a federal due process violation can arise in rare circumstances even where state law is followed.); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (granting habeas relief under AEDPA review based on state court's limitation of cross-examination and refusal to permit introduction of impeachment evidence.); see also Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1980) (holding that federal courts have "a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.")  For the following reasons, it is clear that the adjudication of claim two by the state appellate court was neither contrary to, nor involved an unreasonable application of, any clearly established federal law protecting Petitioner from a fundamentally unfair trial.  The appellate court here stated:

A. *Procedural Background*

Torian testified that before Broadnax's trial he had pled guilty to two counts of voluntary manslaughter and admitted the gang allegation and armed enhancements. Torian agreed to testify at Broadnax's trial in exchange for a sentence ranging from 13 years to 26 years 4 months. At trial, Torian testified that he was intimidated in jail, threatened by Broadnax in person and via letter, and afraid of retaliation in jail and in prison.

---

263, 275 (1962)). The Williams court in turn took that language from People v. Shepherd, 14 Cal. App. 2d 513, 519 (1936). Neither Williams nor Shepherd mentioned or relied on federal constitutional principles in referring to a fair trial.

Following the conclusion of trial, Broadnax filed a motion for new trial based on a newly discovered letter Torian wrote to an inmate and Lincoln Park gang member at the Vista jail.  Though the letter does not discuss the crime, throughout the letter Torian used gang terminology and language.   Torian also signed the letter with his own Lincoln Park nickname, "Baby Ill."  Broadnax argued that the letter, in contrast to how Torian portrayed himself at trial, demonstrates Torian's continuing gang involvement and his need to inflate his importance to another gang member.

Broadnax argued the letter was material and would have changed the outcome of the trial if defense counsel had been able to impeach Torian with the letter. However, the trial court concluded that because Torian "was beaten up badly by (defense counsel) throughout the cross-examination," the letter "would have made no difference whatsoever."  The court denied the motion for new trial.

B. *Standard of Review*

An order denying a motion for new trial is reviewed under an abuse of discretion standard.  (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)  "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."  (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387.)

C. *Governing Law-Section 1181*

Under section 1181, subdivision (8), a trial court may grant a new trial "(w)hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial."

In ruling on a motion for new trial based on newly discovered evidence, the trial court considers (1) whether the evidence and not merely its materiality is newly discovered, (2) whether it is cumulative, (3) whether the evidence is such that it would render a different result probable on retrial, (4) whether the party could with reasonable diligence have discovered and produced it at trial, and (5) whether the evidence to be offered is the best evidence of the matter to be proved. (*People v. Beeler* (1995) 9 Cal.4th 953, 1004.) Further, as a general rule, "'evidence which merely impeaches a witness is not significant enough to make a different result probable ....' (Citation.)"  (*People v. Green* (1982) 130 Cal.App.3d 1, 11.)

D. *Analysis*

Broadnax argues the letter was not cumulative and would have provided material proof of Torian's ongoing gang allegiance. However, on cross-examination Torian testified that that [sic] he had been identified by a witness as the shooter, that he had sold his car 48 hours after the shooting, and that he had crafted a false alibi with Cyr. Given Torian's testimony on cross-examination and the extensive evidence of Torian's gang involvement, we agree with the trial court: the letter is merely cumulative of other evidence in the trial which tended to impeach Torian.

1          In sum, the trial court did not abuse its discretion in denying
2    Broadnax's motion for new trial.

3    (Lodgment No. 6, <u>People v. Broadnax</u>, No. D054634, slip op. at 7-10.)

4          The record supports the finding of both the trial and appellate courts that Torian
5    was heavily cross-examined and effectively impeached with his gang activities and
6    affiliation to the point where introduction of the letter could not have made a difference
7    to the outcome of the trial.  Torian testified on direct that he joined the Lincoln Park
8    street gang when he was seventeen years old, that he personally knew more than fifty
9    Lincoln Park gang members, and that Lincoln Park are rivals and enemies of the
10   Skyline Piru gang.  (RT 542, 545-46, 551.)  Torian denied he had ever shot at a rival
11   gang member, but said he had been with Lincoln Park gang members when they had
12   shot at rival gang members, that he himself had been shot at by a Skyline gang member,
13   and that he had physically fought with Skyline gang members more than fifteen times.
14   (RT 549-55.)  Torian said he would have refused to testify against the rival gang
15   member who shot at him because it was considered "snitching."  (RT 557.)  He said he
16   was currently in protective custody in jail due to breaking the gang code of silence by
17   testifying against Broadnax, and that he would be in danger if he were on the streets.
18   (RT 557-58.)

19         Torian said he began selling marijuana when he was fifteen years old, that his
20   drug business had increased over time, that he carried a handgun in connection to his
21   drug business, and that he primarily sold drugs to fellow gang members.  (RT 562-64.)
22   He testified that he spent three days in jail in 2005, and was thereafter placed on
23   probation, after pleading guilty of possession of a handgun.  (RT 564-65.)

24         Torian was on his way to purchase marijuana on the day of the murders when he
25   ran into Broadnax, and said he gave Broadnax a ride to Skyline gang territory knowing
26   that Broadnax intended to shoot a Skyline gang member in retaliation for the killing of
27   a Lincoln Park gang member by a Skyline gang member the previous night.  (RT 581-
28   85, 594-95, 686.)  Torian was familiar with the area and said he decided where to park,

which was across the street from a liquor store, and decided to stay by the car while Broadnax went to look for victims. (RT 586-91.) Torian and Broadnax then sat on a nearby electrical box where Torian smoked a marijuana cigarette while Broadnax smoked a tobacco cigarette, and Broadnax asked Torian one last time to accompany him. (RT 599.) Torian declined and walked to the liquor store; as he exited the store he saw Broadnax following the victims toward the cul-de-sac where they were later found shot to death. (RT 600.)

Shortly after Broadnax walked out of sight, Torian heard seven or eight rapid gunshots; Broadnax came running back and they both jumped in Torian's car and drove away. (RT 600-02.) Torian said he became nervous and scared he would be caught when he saw his photograph, which had been taken by the liquor store surveillance camera, on the news that night. (RT 628-29, 642-43.) He disposed of the clothes he had been wearing and sold his car. (RT 642, 658-61.) After fabricating an alibi with his girlfriend Kimberly Cyr, Torian arranged to meet with the police at their request. (RT 644-49.) He said he lied to the police during that initial meeting, and told them that he was on his way to see a movie with Cyr when they stopped at the liquor store to buy cigarettes, which was the alibi he and Cyr had fabricated. (RT 650-51.)

Torian was arrested about five weeks after the murders, and after about six months of incarceration he engaged in a "free talk" with the District Attorney's office, which he said was the first time he told the authorities the truth. (RT 661-64.) He said he thought if he told the authorities the truth he might be offered a deal, yet he admitted he withheld information during the free talk in order to minimize his role in the murders. (RT 671, 711-12.) He signed a cooperation agreement about three months later. (RT 671-72.) He understood the agreement to provide that he would be allowed to plead guilty to two counts of manslaughter and admit the gang enhancement and firearm use allegations; if he told the truth at trial he would be sentenced to thirteen years imprisonment, but if he lied or failed to cooperate fully he would be sentenced to twenty-three years and four months, or perhaps even have the deal cancelled and the

14

12cv0560

murder charges reinstated; either way he would be required to serve eighty-five percent of his sentence and would have two "strikes" on his record.  (RT 679-80.)  The agreement also provided that the Department of Corrections would be notified that there were security concerns arising from his cooperation.  (RT 681-82.)

Thus, on direct examination, Torian admitted that ever since he was a teenager he had been a gang member and an armed drug dealer who would not willingly cooperate with police, and was currently in danger for breaking the gang code he had previously lived by and profited from through his drug business.  He admitted he drove Broadnax to Skyline gang territory with knowledge that Petitioner intended to shoot rival gang members, and admitted he destroyed evidence, fabricated an alibi, and lied to the police.  He also admitted cutting a deal with the prosecution which not only benefitted him greatly and motivated him identify Petitioner as the shooter, but relied on the believability of his trial testimony, and admitted he had tried to minimize his role in the murders when negotiating the deal.

On cross-examination Torian said that prior to cooperating with the authorities he was informed by the District Attorney that a witness saw him take a gun out of the trunk of his car and had identified him as the shooter.  (RT 718-19.)  Torian admitted he was initially facing the death penalty for his role in the murders, which was what had motivated him to cooperate.  (RT 718.)  Torian also admitted on cross-examination that he had parked his car for an easy getaway, and that he took the butt of the marijuana cigarette he had smoked at the murder scene with him, whereas Broadnax had discarded the butt of a cigarette he had smoked at the scene which was later found to contain his DNA.  (RT 745-46, 866-67.)  Torian admitted that at the time of the murders he was more in need than Broadnax of earning his "stripes," meaning gaining the respect of gang members which comes from shooting rivals, because Broadnax at that time occupied a higher echelon in their gang than Torian, and Torian would therefore have benefitted more than Broadnax from the killings.  (RT 723.)

/ / /

The amended new trial motion was based on a letter Torian sent to Jean Pierre Rices, a fellow Lincoln Park gang member who had pleaded guilty without a plea agreement to two counts of capital murder with special circumstances and was awaiting the penalty phase of his death penalty trial. (CT 507-16.) Torian's direct testimony took place on December 10, 2008, and his cross-examination concluded on December 15, 2008. (RT 534-748, 924-70.) The letter was dated December 5, 2008, and the envelope postmarked December 8, 2008, but neither were made available to the defense until January 28, 2009, after the verdicts had been returned on December 19, 2008. (CT 512, 514-16.)

Petitioner argued that the prosecution had attempted to portray Torian "as a misunderstood youth who was not into the gang culture and who was remorseful and had definitely cut all his ties to the gang lifestyle," whereas the letter to Rices portrayed him as "a gangster, a sociopath and a dangerous human being or at least likes to portray himself as such." (CT 508-09.) Although Petitioner's characterization of how Torian portrayed himself in his letter appears reasonable (see CT 515-16), the cold record does not support his characterization of how the prosecution portrayed Torian at trial.[5]

Rather, Torian was portrayed on direct examination as an armed, drug-dealing gang member who knowingly participated in a gang shooting which left two persons dead, and who attempted to avoid liability by destroying evidence and fabricating an alibi. He was also shown to be someone who cut a deal for a thirteen-year prison sentence, of which he would be required to serve a little over eleven years, in order to avoid life imprisonment, in exchange for testifying against a friend and fellow gang member in violation of a gang code of silence he had benefitted from for years but abandoned when it suited his purpose. Cross-examination revealed that he was motivated to cooperate in order to avoid the death penalty after being told that an eyewitness had identified him as the shooter, that he admitted he had parked the car for

---

[5] The trial judge did state, however, that: "Notwithstanding the spin that [defense counsel] has put on the evidence . . . there certainly is something to the suggestion that Mr. Torian was portrayed in court somewhat differently than one could conclude by reading this letter." (RT 1432-33.)

a better getaway, took his marijuana cigarette butt with him rather than leave incriminating evidence at the scene as Broadnax had done, and that he stood to benefit more in the gang hierarchy from shooting at rival gang members than would Petitioner. Petitioner has not demonstrated that it was unreasonable for the trial judge to find that:

> [Torian] was beaten up badly by [defense counsel] throughout the cross-examination. Frankly, this one additional bit of information would have made no difference whatsoever. The jury was either going to believe him or not believe him, based upon the direct testimony he provided and [defense counsel]'s cross.

> This was not a situation where [defense counsel] had nothing to cross Mr. Torian with. This is not a situation where Mr. Torian did anything other than admit that he was the wheelman in this double homicide. [¶] It really would not have made any difference whatsoever in the outcome of the case. That's the basis for the denial of the motion.

(RT 1435.)

Petitioner has failed to present a compelling argument that the letter was not cumulative to the evidence presented at trial regarding Torian's gang lifestyle. Although Torian testified that he did not have as high a gang status as others within the gang, which the letter tends to contradict, there is a reasonable argument that, as a District Attorney investigator concluded, the letter was typical of an institutionalized person's attempt to improve his image by making himself look "harder" than he is. (CT 518.) In sum, Broadnax has not demonstrated that the new evidence was so strong that the deprivation of his ability to cross-examine Torian with the letter denied him a fair trial. Holley, 568 F.3d at 1101. Thus, to the extent a generalized federal due process claim is contained in the First Amended Petition and was presented to the state court, Broadnax has failed to overcome the level of deference given to the state court adjudication of such a claim, which was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87; see also Yarborough v. Alvarado, 541 U.S. 652 (2004) (holding that the more general a federal constitutional rule is the more leeway state courts must be given by federal habeas courts with respect to its application.)

To the extent this claim has never been presented to the state court as a federal due process claim, any such claim is now procedurally defaulted in this Court due to Petitioner's delay in presenting it to the state court. See Coleman, 501 U.S. at 735 n.1 (holding that a procedural default arises when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."); see id. at 729-30 (a procedural default arises from a violation of a state procedural rule which is independent of federal law, and which is clearly established and consistently applied.); see Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003) ("We conclude that because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground."); see also Walker v. Martin, 562 U.S. ___, 131 S. Ct. 1120, 1125-31 (2011) (holding that California's timeliness requirement providing that a prisoner must seek habeas relief without "substantial delay" as "measured from the time the petitioner or counsel knew, or should reasonably have known, of the information offered in support of the claim and the legal basis for the claim," is clearly established and consistently applied).

To the extent the Court could reach the merits of such a procedurally defaulted claim, a de novo review would be required. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). The Court would deny any such claim under a de novo review for the same reasons set forth above. In addition, an evidentiary hearing is not appropriate where, as here, the claim can be denied on the basis of the state court record, and where, as here, Petitioner's allegations, even if true, do not provide a basis for habeas relief. Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994).

Based on the foregoing, Petitioner's request for an evidentiary hearing with respect to claim two is **DENIED**, and habeas relief is **DENIED** as to claim two. The Court **ISSUES** a Certificate of Appealability as to this claim. See Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000) (holding that a COA should issue where the questions are adequate to deserve encouragement to proceed further, and that any doubts whether a COA should issue are to be resolved in favor of the petitioner).

## 2.   Claim Three: Insufficient Evidence/Omitted Element

Petitioner's third claim alleges that his right to due process under the Fourteenth Amendment was violated because there is insufficient evidence in the record to support the guilty verdict on the charge of dissuading a witness from testifying, or, alternately, because the jury instructions omitted an element of that offense. (FAP at 38-45.) He contends the jury was never instructed on the element of dissuading a witness from testifying, but was instructed on the element of a different type of witness intimidation, namely, "dissuading a witness or victim from causing a complaint or similar charge to be sought or helping to prosecute that action." (Id. at 40-41.) He argues there is no evidence that he dissuaded a witness from testifying. (Id. at 41-44.)

Respondent answers that the state appellate court applied the correct clearly established federal law in an objectively reasonable manner to find that sufficient evidence existed to support the conviction on this count. (Ans. Mem. at 18-20.) Respondent also contends that any error in omitting an element of the offense in the jury instructions was harmless. (Id. at 20-22.)

Petitioner replies that Respondent misapprehends his sufficiency of the evidence argument and blurs the line between the two separate offenses of dissuading a witness from testifying and from causing a complaint to be prosecuted. (Reply at 12-15.) He argues that the error in omitting the element in the jury instructions was not harmless because no rational juror could have found the element to have been proven beyond a reasonable doubt. (Id. at 15-16.)

This claim was presented to the state supreme court in a petition for review. (Lodgment No. 7 at 16-21.) The petition was summarily denied without a citation of authority or a statement of reasons. (Lodgment No. 8, People v. Broadnax, No. S186803, order at 1.) Petitioner also presented the claim to the state appellate court on direct appeal. (Lodgment No. 3 at 59-65.)

/ / /

/ / /

The Court will look through the silent denial of the claim by the state supreme court to the appellate court opinion, which stated:

### Instructional Error on Dissuading Count

Broadnax argues the jury instruction as to count 3, dissuading a witness, improperly omitted an element of the offense.  We agree the instruction given should have conformed more closely to the allegation set forth in the information [sic].  However, we find that the vice in the instruction given was that it was broader than the crime alleged and that on this record the overbreadth was harmless.

### A. *Procedural Background*

Section 136.1, subdivision (a)(1), makes it a public offense to knowingly and maliciously prevent or dissuade "any witness or victim from attending or giving testimony at a trial, proceeding, or inquiry authorized by law."  The offense is a felony when accompanied by "force or by an express or implied threat of force or violence."  (§ 136.1, subdivision (c)(1).)

Alternatively, section 136.1, subdivision (b)(2), makes it a public offense to attempt to prevent or dissuade a witness from "(c)ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."  Like the offense described in section 136.1, subdivision (a)(2), the offense described in section 136.1, subdivision (b)(2), is a felony when knowingly and maliciously accompanied by "force or by an express or implied threat of force or violence."  (136.1, subd. (c)(1).)

The CALCRIM instruction for section 136.1, subdivision (a)(1), provides that a defendant is guilty if "(t)he defendant maliciously tried to prevent or discourage (a named witness) from attending or giving testimony at trial."  (CALCRIM No. 2622(1A).)  The CALCRIM instruction for section 136.1, subdivision (b)(2), provides in pertinent part: "The defendant maliciously tried to prevent or discourage (a named witness) from cooperating or providing information so that a complaint or indictment could be sought and prosecuted, and from helping to prosecute that action." (CALCRIM No. 2622(1C).)

Count 3 of the information [sic] alleged that Broadnax violated section 136.1, subdivision (c), by using force to dissuade a witness from testifying at a trial or hearing.  However, notwithstanding the fact the information [sic] referred to a violation of section 136.1, subdivision (a)(1), the trial court instructed the jury with CALCRIM No. 2622(1C), the instruction for violation of section 136.1, subdivision (b)(2), dissuading a witness from cooperating with prosecution of a crime.

The jury returned a verdict finding Broadnax "guilty of the crime of DISSUADING A WITNESS FROM TESTIFYING, in violation of Penal Code section 136.1(c), as charged in Count Three of the Indictment."

B. *Harmless Beyond a Reasonable Doubt*

Where a jury instruction omits an element of an offense, reversal is required unless the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 (87 S.Ct. 824).) Here, we do not accept Broadnax's contention that an element of the offense charged was missing from the instruction the jury received. In the context of this case, Cyr's cooperation with prosecution of the murders would necessarily include any testimony Cyr might provide against Broadnax at trial. Thus in this case the instruction was erroneous not because it eliminated Cyr's potential testimony as a predicate for violation of the dissuading statute but because it also permitted conviction based on her nontestimonial cooperation with police. Nonetheless, we will apply the *Chapman* standard of review.

C. *Discussion*

Although the trial court should have instructed the jury with a version of CALCRIM No. 2622(1C), any error was harmless beyond a reasonable doubt. Cyr not only cooperated with the police, she in fact testified at trial as to what Torian initially told her she should tell police and the manner in which Cyr [sic] attempted to prevent her from altering "the story." In light of the fact Cyr offered testimony against Broadnax [sic] *at trial* and in light of the fact the jury in fact found Broadnax [sic] guilty of dissuading a witness, had the jury been instructed with the narrower provisions of CALCRIM No. 2662(1A), which instead of predicating a conviction on her broader "cooperation" with the prosecution of Broadnax, would have focused the jury's attention more narrowly on her potential testimony at trial, we have no doubt the jury would have nonetheless found Broadnax guilty of the dissuading alleged in count 3. On this record there is simply no question that Broadnax wanted to prevent Cyr from cooperating with the police and prosecution in any manner, including providing testimony against him at trial. Under these circumstances, any error in the broad manner in which the jury was instructed was harmless beyond a reasonable doubt. (See *People v. Flood* (1998) 18 Cal.4th 470, 506.)

IV

*Sufficiency of the Evidence to Support Dissuading Count*

Additionally, Broadnax argues the evidence was insufficient to support the verdict on count 3. We found ample evidence of Broadnax's guilt.

In reviewing a sufficiency of the evidence claim, the court must consider the whole record and determine whether the record contains substantial evidence of each of the essential elements of the offense. (*People v. Johnson* (1980) 26 Cal.3d 557, 577.) Substantial evidence to support a verdict is "evidence which is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Id.* at p. 578.) For a judgment to be set aside for insufficiency of the evidence, it must clearly appear that upon no hypothesis is there sufficient substantial evidence to support a conviction. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

12cv0560

1

2

3

> In order to prove a violation of section 136.1, subdivision (c)(1), the prosecution must establish that the defendant had the specific intent to dissuade a witness from testifying. (*People v. Young* (2005) 34 Cal.4th 1149, 1211.)

> Broadnax argues the evidence is insufficient to prove the first element of the offense, that the defendant knowingly and maliciously tried to prevent or discourage Cyr from attending or giving testimony at trial. In light of all the evidence, including Broadnax's repetitive warnings to "stick to the story," his visit to Cyr's home, Cyr's testimony that she felt scared as result of the encounters, and Cyr's testimony that she participated in the witness protection program, a reasonable trier of fact could have found Broadnax guilty beyond a reasonable doubt.

4

5

6

7

8   (Lodgment No. 6, <u>People v. Broadnax</u>, No. D054634, slip op. at 10-13.)

9   The clearly established federal law within the meaning of AEDPA regarding

10  sufficiency of the evidence claims is set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319

11  (1979).  In <u>Jackson</u> the Court held that an applicant is entitled to federal habeas corpus

12  relief, "if it is found that upon the record evidence adduced at the trial no rational trier

13  of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S.

14  at 324; <u>see also</u> <u>In re Winship</u>, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause

15  protects the accused against conviction except upon proof beyond a reasonable doubt

16  of every fact necessary to constitute the crime with which he is charged.")

17  In applying the <u>Jackson</u> standard, federal habeas courts must respect the province

18  of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and

19  draw reasonable inferences from proven facts by assuming the jury resolved all

20  conflicts in a manner that supports the verdict.  <u>Id.</u> at 319.  Once a state court fact

21  finder has found a defendant guilty, federal habeas courts must consider the evidence

22  "in the light most favorable to the prosecution."  <u>Id.</u>  Federal habeas courts must also

23  analyze <u>Jackson</u> claims "with explicit reference to the substantive elements of the

24  criminal offense as defined by state law." <u>Id.</u> at 324 n.16.  Although the appellate court

25  here did not cite to <u>Jackson</u>, "such a citation is not required 'so long as neither the

26  reasoning nor the result of the state-court decision contradicts' Supreme Court

27  precedent." <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 n.12 (9th Cir. 2005) (quoting <u>Early</u>

28  <u>v. Packer</u>, 537 U.S. 3, 8 (2002)).

12cv0560

The Court must "apply the standards of <u>Jackson</u> with an additional layer of deference" under AEDPA, and can only grant relief if the state court's decision was objectively unreasonable.  <u>Juan H.</u>, 408 F.3d at 1274.  This Court "must ask whether the decision of the California Court of Appeal reflected an unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of this case."  <u>Id.</u> at 1275.

The appellate court's determination that sufficient evidence exists to support Petitioner's conviction for dissuading Cyr from testifying is objectively reasonable. Cyr testified that ten days after the murders Broadnax told her "[i]n a very firm voice" that she should stick to the fabricated alibi, which she testified made her feel threatened. (RT 786-87.)  The day after Cyr was interviewed by the police for the first time, Broadnax came to Cyr's mother's house, where Cyr lived at the time, asked her to come outside to a dark area where two other men were standing by a car, and there told her in a firm voice: "Remember what we told you.  Stick to the story and don't do anything stupid.  We know where you live."  (RT 789-91.)  She testified that she thought Broadnax said it to scare her, that she was in fact scared because she had never told Broadnax where she lived, and felt she had no choice but to go outside to speak to Broadnax because she "was afraid that he might just do something right then and there."  (RT 790-92.)  She said she was scared to testify at the preliminary hearing, nervous and scared testifying at trial, scared to go to the police, and that she had lived for an extended period of time in the witness protection program prior to trial.  (RT 765-66, 794-95, 802-03.)

Cyr's testimony provided sufficient evidence to satisfy the element of the offense that Broadnax had the specific intent to dissuade a witness from testifying. <u>People v. Salvato</u>, 234 Cal App. 2d 872, 883 (1991) (identifying elements of the offense as knowingly or maliciously preventing or dissuading a witness from testifying by an express or implied threat of force or violence.)  Petitioner contends Cyr's testimony establishes at most that he tried to dissuade her from speaking to the police or the prosecution, and that Cyr never said Broadnax mentioned anything about testifying.

As noted by the appellate court, however, the California Supreme Court has found the elements of such an offense satisfied when a defendant punched another person in the face and told him: "I should have killed you," when he learned the person had "snitched" on him. People v. Young, 34 Cal. 4th 1149, 1210 (2005). The Young court held that jurors could reasonably infer that the message regarding the person's prior cooperation with police included a threat that the defendant would harm him again if he continued to cooperate in the future by testifying at trial. Id.

This Court must address Petitioner's claim "with explicit reference to the substantive elements of the criminal offense as defined by state law," which the appellate court correctly articulated as permitting a finding that Cyr's testimony was sufficient to satisfy the elements of the offense. Jackson, 443 U.S. at 324 n.16; see also Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (holding that federal courts "are bound by a state court's construction of its own penal statutes.") Considering the additional layer of deference a federal habeas court is required under AEDPA to give over and above the deference required by Jackson, this Court cannot say that the appellate court's opinion involved an objectively unreasonable application of Jackson and Winship. Juan H., 408 F.3d at 1275. The Court finds that the state court adjudication of this claim was neither contrary to, nor involved an unreasonable application of, Jackson or Winship. Richter, 131 S.Ct. at 786-87; Juan H., 408 F.3d at 1275.

The same is true with respect to the appellate court's finding that instructing the jury on dissuading a witness from cooperating with the prosecution of a crime, rather than dissuading a witness from testifying, was harmless beyond a reasonable doubt under the Chapman standard. Assuming Petitioner could demonstrate that a federal constitutional error occurred, and assuming he could show that the appellate court's application of Chapman was objectively unreasonable, this Court is required to determine whether the error was harmless under the standard announced in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Fry v. Pliler, 551 U.S. 112, 119-22 (2007)

(holding that "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard of <u>Chapman</u>," harmless error analysis under <u>Brecht</u> is still required, even after a showing that the state court opinion was contrary to or involved an unreasonable application of clearly established federal law.); <u>see also</u> <u>Roy</u>, 519 U.S. at 5 (applying harmless error doctrine to instruction which omitted an intent element).)  The <u>Brecht</u> standard provides that habeas relief is not available "unless the error resulted in 'substantial and injurious effect or influence in determining the jury's verdict,' . . . or unless the judge 'is in grave doubt' about the harmlessness of the error." <u>Medina v. Hornung</u>, 386 F.3d 872, 877 (9th Cir. 2004) (quoting <u>Brecht</u>, 507 U.S. at 637 and <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995).)

As discussed above, there was ample evidence to support a finding that Petitioner dissuaded Cyr from testifying at trial through her testimony that he instructed her in a threatening manner to stick to their fabricated story.  Any error in instructing the jury on dissuading a witness from cooperating with the prosecution of a crime, as opposed to dissuading a witness from testifying, did not have a "substantial and injurious effect or influence" on the jury's verdict.  <u>Brecht</u>, 507 U.S. at 637.

The Court finds that the state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. <u>Richter</u>, 131 S.Ct. at 786; <u>Williams</u>, 529 U.S. at 412-13; <u>Jackson</u>, 443 U.S. at 324; <u>Winship</u>, 397 U.S. at 364; <u>Juan H.</u>, 408 F.3d at 1275.  The Court also finds that any error was harmless.  <u>O'Neal</u>, 513 U.S. at 436; <u>Brecht</u>, 507 U.S. at 637; <u>Medina</u>, 386 F.3d at 877.  Because claim three can be denied on the basis of the state court record, and because Petitioner's allegations even if true do not provide a basis for habeas relief, an evidentiary hearing is unnecessary.  <u>Campbell</u>, 18 F.3d at 679.

Accordingly, Petitioner's request for an evidentiary hearing on this claim is **DENIED**, and habeas relief is **DENIED** as to claim three.  The Court **DECLINES** to issue a Certificate of Appealability as to this claim.  <u>Lambright</u>, 220 F.3d at 1025.

12cv0560

### 3.   Claim One:  Instructional Error

In claim one, Broadnax alleges that the use of California Criminal Jury Instruction ("CALCRIM") No. 362 at his trial violated his rights to due process, a fair trial, equal protection, and a reliable jury determination, as protected by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and several provisions of the California Constitution.  (See FAP at 11-12.)  The instruction stated:

> If the defendant made a false or misleading statement relating to the charged crime, knowing that the statement was false or intending to mislead, that conduct may show an awareness of guilt of the crime, and you may consider it in determining guilt.  If you conclude that the defendant made such a statement, it's up for you to decide its meaning and importance.  [¶]  However, evidence that the defendant made such a statement cannot prove guilt by itself.

(RT 1279; CT 435.)

Petitioner argues the instruction allowed the jury to use false statements he made to the police to infer a consciousness of having committed the specific charged offenses, rather than a general consciousness of wrongdoing, and thus permitted the jury to draw irrational and unconstitutional presumptions as to the charged offenses and requisite mental states.  (FAP at 6-26.)

Respondent replies that the Court need not consider the claim because it is procedurally defaulted as a result of the appellate court's finding that it was forfeited due to a failure to object at trial on the same grounds raised on appeal.  (Ans. Mem. at 14.)  Alternately, Respondent argues that Petitioner is not entitled to federal habeas relief because the instruction did not infect the trial with fundamental unfairness so as to rise to the level of a federal due process violation, and because any possible error was harmless.  (Id. at 14-16.)

Petitioner replies that he has a right under California Penal Code section 1259 to appellate review of any jury instruction which affects his substantial rights, irrespective of a failure to properly object at trial.[6]  (Reply at 2-3.)  He distinguishes the

---

[6]  California Penal Code section 1259 provides in relevant part: "The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."  Cal. Penal Code § 1259 (West 2004).

procedural default cases relied on by Respondent, and argues that the only case cited which involves a jury instruction claim actually supports his position.  (Id.)

Petitioner raised claim one in a petition for review filed in the California Supreme Court on direct appeal, and in addition challenged the appellate court's finding of waiver on the same grounds he challenges it here.  (Lodgment No. 7.)  That court denied the petition without citation of authority or a statement of reasoning. (Lodgment No. 8, People v. Broadnax, No. S186803, order at 1.)  Broadnax presented the claim to the state appellate court on direct appeal.  (See Lodgment No. 3 at 29-48.) He disputed the People's contention that the claim had been waived, on the same grounds he disputes it here.  (Lodgment No. 5 at 3-4.)  The appellate court found the claim had been waived because the instruction was objected to at trial on different grounds than raised on appeal, but proceeded to deny the claim on the merits.  (See Lodgment No. 6, People v. Broadnax, No. D054634, slip op. at 5-7.)

### a.   Procedural Default

Respondent contends claim one is procedurally defaulted as a result of the state court's finding that it had been waived due to a failure to object at trial on the same grounds raised on appeal.  (Ans. Mem. at 14.)  Respondent contends the Ninth Circuit has recognized that California's contemporaneous objection rule is independent of federal law and consistently applied, and cites authority to that effect.  (Id.)  Petitioner distinguishes the cases cited by Respondent, and argues that he has a right to appellate review of any jury instruction which affects his substantial rights irrespective of a failure to object at trial.  (Reply at 2.)

When a state court rejects a federal claim based upon a violation of a state procedural rule which is adequate to support the judgment and independent of federal law, a habeas petitioner has procedurally defaulted the claim.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  A state procedural rule is "independent" if it is not interwoven with federal law.  La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001). A state procedural rule is "adequate" if it is "clear, consistently applied, and well-

established" at the time of the default. <u>Calderon v. United States District Court</u>, 96 F.3d 1126, 1129 (9th Cir. 1996). The Court may still reach the merits of a procedurally defaulted claim if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the default, or if the failure of the Court to review the claim would result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750.

Respondent has the initial burden of pleading as an affirmative defense that Broadnax's failure to satisfy a state procedural bar forecloses federal habeas review. <u>Bennett</u>, 322 F.3d at 586. Respondent has carried that burden by pleading that claim one was found to be waived due to defense counsel's failure to object at trial on the same grounds raised on appeal. (Ans. Mem. at 14.) The fact that the state appellate court applied the procedural bar and reached the merits of the claim does not bar Respondent from pressing a procedural default argument. <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989); <u>Ylst</u>, 501 U.S. at 803.

The burden has therefore shifted to Broadnax to challenge the independence or adequacy of the procedural bar. <u>Bennett</u>, 332 F.3d at 586. If he makes a sufficient showing, the ultimate burden of proof falls on Respondent. <u>Id.</u> Petitioner attempts to shift the burden back to Respondent by arguing that the cited authority does not apply to jury instructional errors which affect substantial rights, and that one of the cases cited by Respondent actually supports Petitioner's position. (Reply at 2.)

The Court need not determine whether Petitioner has made a sufficient showing so as to shift the burden back to Respondent or whether Respondent has carried the ultimate burden of showing that the procedural bar at issue here is adequate and independent. The interests of judicial economy favor reaching the merits of claim one regardless of the independence and adequacy of the procedural bar applied by the state court. The Ninth Circuit has indicated that "[p]rocedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same." <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing <u>Lambrix v. Singletary</u>, 520 U.S.

518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.")).  That same rationale has been applied in this Court.  See Lima v. Cate, No. 06-cv-2388-AJB (BGS), 2012 WL 4109680, at *6 (S.D. Cal. Sept. 14, 2012); Maxwell v. Cate, No. 10-cv-1697-MMA (RBB), 2011 WL 7758270, at *19 (S.D. Cal. Sep. 8, 2011).

As set forth below, the state appellate court, in addition to holding that the claim had been waived, concluded that it failed on its merits.  This Court finds, for the reasons discussed below, that the appellate court's merits determination is objectively reasonable within the meaning of 28 U.S.C. § 2254(d).  Thus, addressing the default issue would not change the outcome of this proceeding.  An analysis of the merits of the claim would also be required to determine whether prejudice exists to excuse any default.  See Coleman, 501 U.S. at 750.  Accordingly, judicial economy counsels reaching the merits of this claim without a determination of whether the procedural bar applied by the state court here was clearly established and has been consistently applied by the California courts.

### b.   **Merits**

Broadnax argues that CALCRIM No. 362 as given at his trial created an impermissible presumption of guilt on the charged offenses, and that a proper instruction would have permitted the jury to find that his false statements merely showed an awareness of guilt of some wrongdoing, not guilt specific to the charged offenses. (FAP at 12-16.)  He also argues the instruction impermissibly allowed the jury to presume from his false statements that he harbored the requisite mental states, and to infer his mental state at the time of the crimes from statements made well after the crimes. (Id. at 17-19.)

Respondent replies that an instructional error rises to the level of a federal constitutional violation only if it so infects the entire trial with unfairness that the resulting conviction violates due process, which did not occur here. (Ans. Mem. at 14-15.)  Respondent also argues that any error was harmless. (Id. at 15-16.)

Video recordings of two interviews Broadnax gave to the police, one on January 11, 2007, when he was not under arrest, and one on January 19, 2007, after he had been arrested, were played for the jury. (RT 863-66.) Transcripts of those interviews are in the record. (CT 360-77, 378-407.)  In addition, a police officer testified regarding unrecorded statements Broadnax made to the officer on December 15, 2006, ten days after the murders, when he came to the police station to have his mouth swabbed for DNA analysis before he was arrested. (RT 817-20.)  The statements from those interviews which Broadnax contends may have been used by the jury to draw a presumption of guilt on the charged offenses, and a presumption that the requisite mental states had been satisfied, include: (1) he was home with his mother and girlfriend on the day of the murders; (2) he could not remember where he was at the time of the murders; (3) he knew where the Meadowbrook apartments were but did not go there; (4) he had not been in the Skyline area since 2004, as it would have been unsafe and would have violated a gang injunction; (5) he did not recognize Torian in the liquor store surveillance video; (6) he denied he had been anywhere near the murder scene when confronted with the fact that a cigarette butt with his DNA had been found near the scene and a witness had placed him there; and (7) he denied being at the beach with Torian when Cyr claimed Broadnax had threatened her. (See FAP at 8-9; RT 818-20, 837-38, 866-67, 1037; CT 363-65, 368-71, 373-74, 383, 390, 397.)

In an attempt to prevent the instruction from being given, defense counsel argued to the trial judge that the statements did not show a consciousness of guilt but merely reflected "a gang thing" in which Broadnax tried to protect Torian by following a code of silence. (RT 1037-38.) Defense counsel argued that same point to the jury, stating in closing arguments that Torian was the shooter and Broadnax had merely followed the gang code of silence in protecting him, but that in any case Broadnax had the right to remain silent upon arrest and was never under an obligation to tell the police the truth. (RT 1387-88.) Defense counsel also argued to the jury that it made sense that Petitioner would not admit to being in the Skyline area because he was under a gang

12cv0560

injunction precluding him from going there, which Broadnax himself had explained to the police during the first interview.  (RT 1384; CT 365.)  Counsel also argued to the jury that people lie for many different reasons, and that Broadnax had no incentive to provide information on Torian once the police had told him that:  "Your buddy Torian gave you up."  (RT 1394-95.)

The appellate court denied this claim:

> An instruction on consciousness of guilt is properly given when evidence supports an inference that prior to trial, the defendant made false statements concerning the charged offense.  (*People v. Kelly* (1992) 1 Cal.4th 495, 531.)  Here, during a series of interviews, Broadnax in fact made false statements to police regarding his activities on December 6 and his relationship with Torian.  Given Broadnax's false statements concerning the charged crime, the court properly instructed the jury on consciousness of guilt.  (*Ibid.*)

> Broadnax nevertheless argues CALCRIM No. 362 allowed the jury to draw a presumption of guilt as to the specific crime charged.  The instruction makes no such presumption.  The instruction states that while the jury may consider evidence tending to demonstrate an awareness of guilt of the crime, the instruction also expressly advises the jury such evidence is not sufficient in itself to prove guilt.  Thus under the express terms of the instruction, evidence of awareness of guilt may only strengthen inferences of guilt that arise from other facts.  Rather than creating any presumption of guilt, the instruction expressly limits how evidence of consciousness of guilt may be used.

> In sum, although the issue on appeal was not adequately preserved for review, the court nonetheless properly instructed the jury with CALCRIM No. 362.

(Lodgment No. 6, <u>People v. Broadnax</u>, No. D054634, slip op. at 6-7.)

In order to be entitled to federal habeas relief based on a defective jury instruction, Petitioner must demonstrate that the instruction "so infected the entire trial that the resulting conviction violates due process." <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973).)  "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." <u>McGuire</u>, 502 U.S. at 72 (quoting <u>Cupp</u>, 414 U.S. at 147).

As the appellate court found, the instructions as a whole clearly informed the jury that Broadnax's false statements alone were not sufficient to find proof of guilt on

the charged offenses.  In fact, the challenged instruction specifically stated: "However, evidence that the defendant made such a statement cannot prove guilt by itself."  (RT 1279.)

The jury was further instructed:

If you decide that the defendant made the statements, you can consider those statements, along with all the other evidence, in reaching your verdict.  It's up for you to decide how much importance you are going to give those statements. . . .  [¶]  A defendant in a criminal case cannot be convicted of any crime based on his out-of-court statement alone.

(RT 1278.)

Thus, the jury was instructed by CALCRIM No. 362 that "<u>If</u> the defendant made a false or misleading statement <u>relating to the crime</u>," they were permitted, but not required, to consider that the statements showed an awareness of guilt of the crime. (RT 1279 (emphasis added).)  They were also instructed that such statements are not sufficient in and of themselves to prove guilt, and that in any case awareness of guilt is only one factor to consider.  (RT 1278-79.)  "The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, makes sense of, and follow the instructions given them." <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9 (1985).

Broadnax argues that a presumption must be considered irrational or arbitrary "unless it can at least be said with substantial assurance that the presumed fact is more likely than not to follow from the proved fact on which it is made to depend." (FAP at 15 (quoting <u>Leary v. United States</u>, 395 U.S. 6, 36 (1968)).)  As discussed immediately below in considering whether any instructional error was harmless, Broadnax's statements to the police denying he had anything to do with the murders and that he was not present when Cyr testified he threatened her, to the extent the jury found them to be false, actually gave rise to a reasonable inference of an awareness of guilt as to the charged offenses.

Moreover, in order for the jury to have found that Broadnax had lied when he denied involvement in the murders and denied intimidating Cyr, they would first have

to have found he committed those offenses.  For example, Cyr testified that ten days after the murders Broadnax told her "[i]n a very firm voice" that she should stick to the fabricated alibi, which she testified made her feel threatened.  (RT 786-87.)  The day after Cyr was interviewed by the police, Broadnax came to Cyr's mother's house, where Cyr lived at the time, asked her to come outside to a dark area near where two other men were standing by a car looking at her, and there Broadnax told her in a firm voice:  "Remember what we told you.  Stick to the story and don't do anything stupid.  We know where you live."  (RT 789-93) (emphasis added).  As discussed above with respect to claim three, the statements made by Petitioner to Cyr, to the extent the jury found they had been made, provided direct proof of guilt on the charges of dissuading a witness and attempted intimidation of a witness.  Any contention that the jury was allowed to draw an unreasonable presumption of guilt on charges from statements which actually prove those charges is without merit.

The possible exception is Broadnax's statements denying he had been in the Skyline area for several years, which he made in response to evidence that his DNA had been found on a cigarette butt at the murder scene.  Defense counsel pointed out that the prosecution had not proven that the butt could not have been tossed out the window of a car as Broadnax drove through the area.  (RT 1382, 1388-89.)  To the extent the jury found that statement to be false, it was plausibly explained both by defense counsel in closing argument, and by Broadnax himself in his recorded police interview, that he had an incentive to deny being in the Skyline area in order to avoid admitting to a violation of the gang injunction.  Thus, the jury did not necessarily draw an inference of guilt on the charged offenses from this false statement, and even if they had, it was an inference they were permitted but not required to use as one factor to consider, not a presumption of guilt.  In any case, as discussed below in the harmless error section, any inference drawn from this statement was likely overshadowed by Broadnax's competing statements to the police denying guilt and to Torian admitting he had murdered the victims in cold blood, only one of which could be true.

It was objectively reasonable for the appellate court to conclude that the evidence of awareness of guilt the jury may have drawn from Petitioner's false statements merely strengthened other inferences of guilt which arose from the facts adduced at trial, and did not create a presumption of guilt on the charged offenses, but in fact expressly limited how any finding of awareness of guilt may be used. Under the circumstances of this case, the instruction did not "so infect[] the entire trial that the resulting conviction violates due process." McGuire, 502 U.S. at 72. Thus, the state court's opinion "was [not] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S.Ct. at 786-87.

The same is true regarding Petitioner's contention that the jury was permitted to draw unreasonable presumptions regarding the requisite mental states. (FAP at 17-19.) He argues the instruction directed the jury to conclude from the false statements that he possessed the requisite mental states necessary to show: (1) intent to kill, premeditation, and deliberation required to prove first degree murder; (2) intent to assist, further, or promote criminal conduct by gang members in order to prove the gang enhancement allegation; (3) intent to kill, and participation in and knowledge of the gang's pattern of criminal activity, as well as active participation in and an intent to further the gang's activities, required to prove the special circumstance allegations; (4) intent to knowingly and maliciously intimidate a witness; and (5) intent to cause a witness to give false material information. (Id.)

The jury was instructed that:

> A defendant in a criminal case cannot be convicted of any crime based on his out-of-court statement alone. [¶] The identity of a person who committed the crime or degree of the crime may be proved by a defendant's statements alone. You may not convict the defendant unless the people have proven him guilty beyond a reasonable doubt.

(RT 1279) (emphasis added).

Thus, unlike the awareness of guilt on the charged offenses arising from Petitioner's false statements, the jury was allowed to consider any statements made by

Broadnax in determining the degree of the crime.  The jury was also instructed regarding the mental states necessary for murder and first degree murder, and were instructed they could not find Broadnax guilty of first degree murder unless they first found he had committed murder.  (RT 1280-83.)  Petitioner cites United States v. Rubio-Villareal, 967 F.2d 294, 299-300 (9th Cir. 1992), (see FAP at 15), in which the Ninth Circuit identified a troubling aspect of permissive inferences, that they may intrude on the jury's deliberative process by suggesting there is sufficient proof of intent from an isolated fact (such as false statements), even though all the evidence together may not establish intent, thereby releasing the jury from their obligation to weigh all the evidence presented at trial.

Torian's testimony provided sufficient evidence that Broadnax admitted he had acted with the requisite malice aforethought to support the murder convictions, as well as the requisite premeditation and deliberation for first degree murder.  Torian testified that Broadnax said he wanted to go to the Skyline area to shoot rival gang members in retaliation for the recent killing of a Lincoln Park gang member, showed Torian a gun, and asked Torian to help him find and shoot victims.  (RT 581-96.)  Torian parked near the liquor store where Broadnax said he intended to walk around to look for victims; when Broadnax spotted two likely victims he followed them and Torian heard gunshots moments later.  (RT 599-600.)  In the car on the ride home Broadnax told Torian he had followed the two victims into a cul-de-sac, approached them pretending he was drunk, confirmed they were from Skyline by speaking to them in Skyline gang lingo, and then shot one in the head and the other as he tried to run away.  (RT 609-13.)

Petitioner's statements to Torian provided the jury with direct evidence that Broadnax achieved the requisite mental states for first degree murder.  See People v. Manriquez, 37 Cal. 4th 547, 577-78 (2005) (premeditation and deliberation can be shown by planning, motive and manner of killing sufficient to support an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse).  His statements to Torian also demonstrated that Broadnax acted with

malice aforethought, which the jury was instructed requires an intent to kill or intentionally committing an act dangerous to human life. (RT 1281.) Petitioner once again puts forth an unpersuasive argument that it was error to allow the jury to presume guilt from statements which directly prove guilt. Considering the instructions as a whole and in the context of the trial record, Petitioner has not established that the challenged instruction "so infected the entire trial that the resulting conviction violates due process." McGuire, 502 U.S. at 72; Cupp, 414 U.S. at 147.

Petitioner argues the jury was impermissibly allowed to find he deliberated and premeditated the crimes from statements made well after the murders. (FAP at 19.) However, the jury was instructed that the requisite intent must be formed before the act causing death is committed. (RT 1281.) In addition, Torian testified that Broadnax described the murders just moments after they were committed. As set forth above, Broadnax's statement to Torian describing the murders satisfies the elements of first degree murder, and overshadows or renders irrelevant any statements Broadnax later made to Cyr or to the police which the jury might have relied on to show the degree of the crime. Furthermore, even assuming it was error to allow the jury to use Petitioner's statements to the police and Cyr to determine the degree of the murders or the requisite mental states for the other charges and enhancements, any error was harmless for the reasons discussed below. The denial of this aspect of claim one by the state court was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.[7]

In any case, assuming there was instructional error, any error was harmless for the following reasons. See Babb v. Lozowsky, 704 F.3d 1246, 1260 (9th Cir. 2013) ("Instructional errors are generally subject to harmless error review.") (citing California

---

[7] Although the state appellate court did not mention or directly address this aspect of claim one, there is a rebuttable presumption that it was denied on the merits. Johnson v. Williams, 568 U.S. ___, 133 S. Ct. 1088, 1096 (2013). Johnson held that Richter provides the standard for review for a claim where, as here, the presumption has not been rebutted. Id.

v. Roy, 519 U.S. 2, 5 (1996) (applying harmless error doctrine to instruction which omitted an intent element).)  "[W]hen considering whether erroneous instructions constitute harmless error, courts ask whether it is reasonably probable that the jury would still have convicted the petitioner on the proper instructions." Babb, 704 F.3d at 1260.

An eyewitness testified at trial that Torian shot the victims while the person with Torian waited in the car.  (RT 992-99.)  The prosecution argued that Broadnax was equally guilty whether he was the shooter or had aided and abetted Torian.  (RT 1347-50.)  Thus, under the prosecution's theory of the case, which was supported by the evidence, even if Broadnax was lying to the police to protect Torian (as defense counsel argued in opposition to the giving of the instruction), Broadnax was at the same time necessarily lying to conceal his own guilt when he denied involvement, which in turn showed an awareness of guilt.  Furthermore, the jury could only find that Broadnax had lied when he denied involvement in the murders or denied being with Cyr at the beach when she claimed he intimidated her only if they first found he had committed those offenses.

Broadnax's denial of having been in the Skyline area despite a cigarette butt containing his DNA having been found near the murder scene is more problematic. Defense counsel argued to the jury that the prosecution had not proven that the butt could not have been tossed out the window of a car as Broadnax drove past the area. (RT 1382, 1388-89.)  Although that appears to be a constructive admission that Broadnax had lied when he said he had not been in the Skyline area recently, the lie was plausibly explained both by counsel and Broadnax himself, in that he had an incentive to falsely deny being in the Skyline area in order to avoid admitting to a violation of the gang injunction.  Thus, the jury did not necessarily draw an inference of guilt on the charged offenses from this false statement.  Even if they had, it was likely overshadowed by evidence of the presence of Broadnax's DNA at the scene, and by the conflict between his statements to the police denying guilt and his statements to

Torian admitting he had committed premeditated murder, only one of which could be true.

In addition to the fact that the evidence supported giving the instruction, the jury was instructed that even if they found an awareness of guilt existed it was insufficient by itself to prove guilt, but was only one factor to be considered in reaching their verdicts. The jurors were also provided with theories which would have permitted them not to draw an inference of an awareness of guilt on the charged offenses from Broadnax's false statements, such as a natural disinclination some people (and gang members in particular) have to cooperate with the police, or a misguided invocation of the right to remain silent. (See RT 1394-95.)

Similarly, Torian's testimony provided sufficient evidence that Petitioner acted with the requisite mental state for first degree murder. It is unlikely the jury would have relied on Broadnax's false statements to the police as proof that he harbored malice aforethought, premeditation, or deliberation in the face of direct testimony supporting such findings. Rather, as discussed above, the instruction permitted them to consider the statements as additional evidence tending to prove guilt, but were not sufficient by themselves, other than for the degree of the crimes. The same is true as to Petitioner's contentions regarding the intent necessary for the witness intimidation charges in light of Cyr's testimony, and the gang enhancement allegations in light of Torian's testimony. (FAP at 17.)

The Court finds it is reasonably probable the jury would have convicted Broadnax even if they had been instructed that his false statements may provide evidence of a consciousness of guilt in a general sense rather than a consciousness of guilt on the charged offenses. Thus, any error was clearly harmless. Babb, 704 F.3d at 1260.

A review of the state court record reveals that the adjudication of claim one by the state court was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination

of the facts in light of the evidence presented in the state court proceedings.  It is also clear from the state court record that any error was harmless.  An evidentiary hearing is not appropriate because the claim can be denied on the basis of the state court record, and because Petitioner's allegations, even if true, do not provide a basis for habeas relief.  Campbell, 18 F.3d at 679.

The Court **DENIES** habeas relief as to claim one without ruling on whether the claim is procedurally defaulted.  Petitioner's request for an evidentiary hearing on this claim is **DENIED**.  The Court **DECLINES** to issue a Certificate of Appealability as to claim one.  Lambright, 220 F.3d at 1025.

#### 4.   Evidentiary Hearing on Brady Claim

In his Reply to Respondent's Amended Answer, Petitioner contends that an evidentiary hearing is necessary in order to determine whether the delay by the prosecution in turning over to the defense the letter Torian sent to Rices was a violation of Brady v. Maryland, 373 U.S. 83 (1963).  (Reply at 5.)

Broadnax has not raised a Brady claim here or in the state courts.  To the extent he intended to raise a Brady claim in his Reply, any such claim is procedurally defaulted due to his failure to timely present it to the state court for the same reasons discussed above with respect to claim two.  To the extent Petitioner's Reply can be liberally construed to be a request to amend his First Amended Petition to include a Brady claim, the request is denied for the same reasons the Court denied Petitioner's Motion for Stay and Abeyance in which he sought leave to return to state court to exhaust a Brady claim.  (See Oct. 26, 2012, Order at 20-22, ECF No. 31.)

In addition, an evidentiary hearing on a Brady claim is inappropriate because this Court must make its § 2254(d) determination based solely on the evidence presented to the state court.  Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).  Petitioner can only proceed to develop additional evidence in federal court if § 2254(d) is satisfied, which it has not been, or, possibly, if new evidence is presented which transforms an already-exhausted claim (for example claim two here) into a new claim

which has not been adjudicated on the merits in the state court (for example a <u>Brady</u> claim), in which case § 2254(d) arguably would not apply. <u>Id.</u> at 1401 n.10; <u>Stokley v. Ryan</u>, 659 F.3d 802, 808-09 (9th Cir. 2011), <u>cert. denied</u>, 133 S.Ct. 134 (2012).[8]

Even were the Court to entertain a <u>Brady</u> claim, the claim is without merit.  The trial judge found that although the letter should have been turned over to the defense: "I find nothing to indicate that either [of the prosecutors] held the letter back; that they produced it as soon as it became available to them."  (RT 1435.)  That finding is entitled to AEDPA deference in this Court.  <u>See</u> 28 U.S.C.A. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.") (West 2006); <u>King v. Trujillo</u>, 638 F.3d 726, 730-31 (9th Cir. 2011) (applying § 2254(e)(1) to a <u>Brady</u> claim.  Broadnax can demonstrate materiality under <u>Brady</u> only if the suppression of the evidence deprived him of a fair trial.  <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985); <u>see</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995) (holding that prejudice under <u>Brady</u> is shown when "there is a reasonable probability of a different result" as to guilt or penalty.)  Petitioner cannot demonstrate materiality or prejudice for the same reasons discussed above as to why he was not deprived of a fair trial by the late disclosure of Torian's letter.

Accordingly, The Court **DENIES** Petitioner's request for an evidentiary hearing with respect to the delay in disclosing the evidence upon which the amended new trial motion was based.  To the extent his request could be construed as a request to present a <u>Brady</u> claim, the request is **DENIED** and the Court **DECLINES** to issue a Certificate of Appealability as to this issue."  <u>Lambright</u>, 220 F.3d at 1026 (denial of a COA is appropriate unless "jurists of reason would find it debatable whether the district court was correct in its procedural ruling.")

/ / /

---

[8]   It appears to be an open question whether <u>Pinholster</u> precludes introduction of evidence in support of a <u>Brady</u> claim.  <u>See</u> <u>Gonzalez v. Wong</u>, 667 F.3d 965, 999-1000 (9th Cir. 2011) (W. Fletcher, J., concurring).  The Court need not reach that issue because Petitioner has not presented a <u>Brady</u> claim and because any <u>Brady</u> claim is clearly without merit.

12cv0560

**IV.    CONCLUSION AND ORDER**

For all the foregoing reasons, Petitioner's request for an evidentiary hearing is **DENIED**, the First Amended Petition for a writ of habeas corpus is **DENIED**, and a Certificate of Appealability is **ISSUED** limited to claim two.

DATED:  May 8, 2013

HON. GONZALO P. CURIEL
United States District Judge

12cv0560